[No. 66758-6.   En Banc.]
Argued January 27, 1999.     Decided August 19, 1999.
THE STATE OF WASHINGTON, *Respondent*, v. ELVE ROBINSON, JR., *Petitioner.*

---

754

*Michael Lawrence Mittlestat* of *Washington Appellate Project*, for petitioner.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for respondent.

DURHAM, J. — Elve Robinson challenges his convictions for second-degree rape and unlawful imprisonment. Robinson argues that he was deprived of his constitutionally protected right to testify because his defense counsel prevented him from testifying at trial. Robinson contends that because he was denied the right to testify on his own behalf, he is entitled to a new trial.

We hold that Robinson has presented sufficient evidence to entitle him to an evidentiary hearing. Accordingly, we reverse the Court of Appeals and remand this case for an evidentiary hearing on the issue of whether Robinson's waiver of his right to testify was knowing and voluntary. At

the hearing, Robinson must show by a preponderance of the evidence that his attorney actually prevented him from testifying. If Robinson is able to meet this burden, the lower court must next address the question of whether he was prejudiced by his attorney's deficient performance. If Robinson can prove that he was prejudiced, he is entitled to a new trial.

I

The State charged Elve Robinson with one count of second-degree rape and one count of unlawful imprisonment after Robinson picked up a woman at a Seattle bus stop, took her to a hotel in Blaine, Washington, and allegedly forced her to have sexual intercourse with him against her will. The defense's theory was that the victim, Diane Morris, had consensual sex with Robinson in exchange for drugs. Before trial, Robinson's attorney, Richard Kimberly, told the court that "Mr. Robinson will testify in fact Miss Morris was looking for drugs and asked repeatedly for a double rock." Report of Proceedings at 8 (Nov. 13, 1995). To support this theory, the defense presented expert testimony that Morris had a high concentration of cocaine in her system when she was treated at the hospital after the incident. Robinson did not take the stand during the trial, however, and Kimberly included in his packet of proposed jury instructions an instruction directing the jury not to draw an inference of guilt or prejudice from the fact that the defendant did not testify.

During the course of the trial, the court held Attorney Kimberly in contempt of court twice and fined him for disrespectful comments made to the court outside the presence of the jury. The second time that the court held him in contempt, Kimberly left the courtroom and told the bailiff that he was not going to come back. Kimberly returned in the presence of his own counsel only after being ordered to do so by the court.

After the court held Kimberly in contempt a second time,

Robinson apparently decided that he wished to testify. The evidence suggests that Robinson made his desire to testify known to Kimberly after the defense rested but before closing arguments. However, Kimberly did not move to reopen the evidence to allow Robinson to testify, but rather proceeded with closing arguments. The jury convicted Robinson of second-degree rape and unlawful imprisonment.

After the trial, Robinson fired Kimberly, acquired new counsel, and filed a motion for a new trial, arguing that Kimberly prevented him from testifying and thereby deprived him of his constitutional right to testify. In an affidavit attached to Robinson's motion, Kimberly admitted that his decision not to make a motion to reopen the evidence was based upon his own personal considerations, rather than trial strategy. He stated:

> [w]hen I did return to court to represent [Robinson] after the second contempt citation, Elve pleaded with me to put him on the stand and let him testify on his own behalf. At that time I was so upset about my interactions with the trial judge that I only wanted to get this case done with and not be in court in front of the trial judge anymore than absolutely necessary in this case. Consequently, I refused to accede to my client's request and did not ask the court for permission to reopen the case and allow the defendant to testify as he demanded that I do.

Supplemental Clerk's Papers (Supp. CP) at 81.

Kimberly added "If I could have viewed my client's request objectively at the time, I certainly would have asked to allow him to testify as he requested." *Id.*

Robinson's new attorney argued that failing to alert the court to Robinson's desire to testify not only deprived Robinson of his constitutional right to testify, but amounted to per se ineffective assistance of counsel. Based upon these constitutional errors, Robinson asked for a new trial. In his posttrial motions, Robinson failed to make an offer of proof about the substance of his proposed testimony and failed to show that he was prejudiced by his attorney's actions. The trial court denied Robinson's motion for a new trial, but

noted that had Kimberly moved to reopen the evidence at the first trial, the court would have granted the motion and allowed Robinson to testify.

The Court of Appeals affirmed Robinson's convictions. The court held that a defendant who waives the right to testify and does not inform the court that he has changed his mind until after the jury returned a verdict must submit a description of what his testimony would have been had he testified. *State v. Robinson*, 89 Wn. App. 530, 536, 953 P.2d 97 (1997). Without such a showing, a court has no basis to determine whether the proposed testimony would have made a difference to the ultimate outcome. *Id.* Robinson failed to provide such an offer of proof about the substance of his proposed testimony, so the court could not have concluded that he had been prejudiced. The court also rejected Robinson's ineffective assistance of counsel claim. While agreeing that the defense counsel's conduct fell below acceptable standards, the court held that Robinson failed to demonstrate that he was prejudiced by the conduct or that there was a reasonable probability that the outcome would have been different but for his attorney's conduct. *Id.* at 538. We granted Robinson's petition for discretionary review.

II

The United States Supreme Court has recognized that a criminal defendant has a constitutional right to testify on his or her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). On the federal level, the defendant's right to testify is implicitly grounded in the Fifth, Sixth, and Fourteenth Amendments. *Id.* at 51-52. In Washington, a criminal defendant's right to testify is explicitly protected under our state constitution. This right is fundamental, and cannot be abrogated by defense counsel or by the court. *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). Only the defendant has the authority to decide whether or not to testify. *Id.* The waiver of the right to testify must be made knowingly, voluntarily, and intel-

ligently, but the trial court need not obtain an on the record waiver by the defendant. *Id.* at 558-59.

■ Washington case law supports Robinson's assertion that a defendant who remains silent at trial may be entitled to an evidentiary hearing if he alleges that his attorney actually prevented him from testifying. *Thomas,* 128 Wn.2d 553; *State v. King,* 24 Wn. App. 495, 601 P.2d 982 (1979). This court first recognized this rule in *In re Personal Restraint of Lord,* 123 Wn.2d 296, 868 P.2d 835 (1994). In *Lord,* the defendant argued that he did not knowingly and voluntarily waive his right to testify. *Lord,* 123 Wn.2d at 316. He claimed that the only reason that he did not testify at trial was because his attorneys thought that his testifying would be the "wrong thing" to do. *Id.* at 316. This court held that Lord's mere assertion that his counsel advised him against taking the stand was insufficient to warrant an evidentiary hearing on the issue of whether the waiver was knowing and voluntary. We suggested, however, that Lord would have been entitled to an evidentiary hearing had he alleged that his attorneys " 'actually prevented' him from testifying." *Id.* at 317 (quoting *State v. King,* 24 Wn. App. at 499). Lord's allegations were plainly insufficient, so there was no need to reexamine his decision not to testify.

Washington is not alone in affording defendants an evidentiary hearing upon a sufficient showing that their attorneys actually prevented them from taking the stand. Several federal jurisdictions provide for evidentiary hearings if a defendant is able to show that his attorney prevented him from testifying. *Siciliano v. Vose,* 834 F.2d 29 (1st Cir. 1987); *Underwood v. Clark,* 939 F.2d 473 (7th Cir. 1991); *Passos-Paternina v. United States,* 12 F. Supp. 2d 231 (D.P.R. 1998). *See also* Louis M. Holscher, *The Legacy of* Rock v. Arkansas: *Protecting Criminal Defendants' Right to Testify in Their Own Behalf,* 19 NEW ENG. J. ON CRIM. & CIV. CONFINEMENT 223, 264 (1993) (Affording an evidentiary hearing is a "middle course approach.").

The amount of evidence that must actually be produced

before a criminal defendant is entitled to such an evidentiary hearing was discussed most recently in the unanimous *State v. Thomas* decision. 128 Wn.2d 553. In *Thomas*, a defendant challenged his conviction in posttrial motions, asserting, without any factual support, that his attorney had prevented him from testifying. *Id.* at 561. We held that no evidentiary hearing was required. "The defendant must . . . produce more than a bare assertion that the right [to testify] was violated; the defendant must present substantial, factual evidence in order to merit an evidentiary hearing or other action." *Id.* Once a defendant meets this burden, he is entitled to an evidentiary hearing on the issue of whether he voluntarily waived the right to testify. *Id.* at 557.

Mere allegations by a defendant that his attorney prevented him from testifying are insufficient to justify reconsideration of the defendant's waiver of the right to testify. Defendants must show some "particularity" to give their claims sufficient credibility to warrant further investigation. *Underwood*, 939 F.2d at 476. The defendant must "allege specific facts" and must be able to "demonstrate, from the record, that those 'specific factual allegations would be credible.' " *Passos-Paternina*, 12 F. Supp. 2d at 239 (quoting *Siciliano*, 834 F.2d at 31).

In this case, Robinson has provided substantial factual evidence to support his claim that his trial counsel actually prevented him from testifying. Robinson has submitted affidavits from several different people indicating that he unequivocally demanded to be able to testify before closing arguments began. A courtroom guard saw Kimberly storm out of the courtroom after telling Robinson to find another attorney because he would not continue the case. The guard also heard Robinson complaining about not being able to take the stand. The attorney who accompanied Kimberly back to court claims that Robinson told her that he wanted to take the stand to give his own version of the events. In addition, Kimberly concedes that Robinson "pleaded" with him to be allowed to testify. Supp. CP 81. Kimberly admits

that personal reasons prevented him from moving to reopen the testimony. Federal cases have held that affidavits from lawyers who allegedly interfered with the defendant's right to testify may give the defendant's claims enough credibility to warrant an investigation into whether the attorneys prevented the defendants from testifying. *Underwood*, 939 F.2d at 476; *Passos-Paternina*, 12 F. Supp. 2d at 239.

The Court of Appeals' decision does not discuss the *Lord* line of cases nor address Robinson's argument that he is entitled to an evidentiary hearing. The decision is therefore inconsistent with Washington case law. Accordingly, we reverse the Court of Appeals. We conclude that Robinson has made a sufficient showing that his attorney, Richard Kimberly, actually prevented him from testifying. Robinson is therefore entitled to an evidentiary hearing on the issue of whether the waiver of his constitutional right to testify was knowing and voluntary.[1]

## III

We turn next to the question of what will transpire at the evidentiary hearing. Despite our case law on the availability of an evidentiary hearing for silent defendants upon a sufficient showing, it remains relatively unclear what it means to be "actually prevented from testifying" by an attorney. Similarly, Washington cases have not addressed the remedy that should be afforded to defendants who successfully prove that their attorneys actually prevented them from testifying. We will discuss these two issues in the following section.

## A

■ We turn first to the question of what it means to be

---

[1] We agree that it is not clear that Robinson had an opportunity to make the offer of proof about the substance of his proposed testimony, nor that the question of prejudice was ever considered at the trial level. *State v. Robinson*, 89 Wn. App. 530, 543, 953 P.2d 97 (1997) (Ellington, J., concurring in part and dissenting in part). We therefore hold that Robinson should be given the opportunity to make the proper offer of proof and to demonstrate prejudice at the evidentiary hearing.

"actually prevented from testifying" by an attorney. According to the State, a defendant is "actually prevented from testifying" only if the attorney coerces him into remaining silent. Without evidence of coercion on the part of the attorney, the State argues that a defendant cannot prove that his failure to testify was not merely strategic. As support for its argument, the State points to language in *Lord* indicating that the defendant must provide some "credible evidence of coercion" by defense counsel before we will reexamine the defendant's decision not to testify. *Lord*, 123 Wn.2d at 317. In this case, the State argues that Robinson is not entitled to an evidentiary hearing because there is no evidence that Robinson's attorney coerced him into remaining silent.

We agree that defendants who can show that their attorneys used coercion to prevent them from testifying are entitled to an evidentiary hearing. When an attorney tells the defendant that he is "legally forbidden to testify or in some other way compel[s] [the defendant] to remain silent," the attorney has actually prevented the defendant from testifying. *Passos-Paternina*, 12 F. Supp. 2d at 241 (quoting *Siciliano*, 834 F.2d at 31). A particularly egregious example of using such coercion to prevent a client from testifying is when an attorney threatens to withdraw unless the defendant agrees not to take the stand. *See, e.g., State v. Flynn*, 190 Wis. 2d 31, 527 N.W.2d 343, 350 (Ct. App. 1994). Similarly, attorneys who misinform the defendant of the consequences of taking the stand or make other misrepresentations to induce the defendant to remain silent also prevent their clients from testifying. Defendants who can prove that their attorneys used such coercive tactics have unquestionably proven that their attorneys actually prevented them from testifying.

■ However, we disagree with the State's narrow interpretation of the phrase "actually prevented from testifying." An attorney can prevent his client from testifying even without using coercion or misrepresentation. As this case demonstrates, attorneys can prevent their clients from

testifying by refusing to call the defendant as a witness even though the attorney knows that the defendant wants to testify. It is well established that the ultimate decision whether or not to testify rests with the defendant. *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). If the decision to testify is made against the will of the defendant, it is axiomatic that the defendant has not made a knowing, voluntary, and intelligent waiver of his right to testify. *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), *vacated by* 932 F.2d 899 (11th Cir. 1991), *rev'd on reh'g on other grounds by en banc*, 953 F.2d 1525 (11th Cir. 1992). Therefore, a defendant's right to testify is violated if "the final decision that he would not testify was made against his will." 908 F.2d at 759. *See also Jordan v. Hargett*, 34 F.3d 310, 312-13 (5th Cir. 1994); *Lema v. United States*, 987 F.2d 48, 53 (1st Cir. 1993) (right to testify is violated if a defendant's will to testify is "overborne" by defense counsel). Courts have held that a defendant's right to testify is violated not only when an attorney uses threats and coercion against his client, but also when the attorney flagrantly disregards the defendant's desire to testify. *United States v. Robles*, 814 F. Supp. 1233, 1242 (E.D. Pa. 1993); *United States v. Butts*, 630 F. Supp. 1145, 1147 (D. Me. 1986).

This is not to say that defendants who accept tactical advice from their attorneys on the decision to testify can later claim that their right to testify was denied. *State v. Hardy*, 37 Wn. App. 463, 466-67, 681 P.2d 852 (1984); *State v. King*, 24 Wn. App. 495, 500, 601 P.2d 982 (1979). We must distinguish between cases in which the attorney actually prevents the defendant from taking the stand, and cases in which counsel "merely advise[s] [the] defendant against testifying as a matter of trial tactics." *King*, 24 Wn. App. at 499. Furthermore, while the decision to testify should ultimately be made by the client, it is entirely appropriate for the attorney to advise and inform the client in making the decision to take the stand. "Unaccompanied by coercion, legal advice concerning [the] exercise of the

right to testify infringes no right, but simply discharges defense counsel's ethical responsibility to the accused." *Lema*, 987 F.2d at 52 (citations omitted).

We recognize that these are close cases. When an attorney merely refuses to accede to his client's wishes, the court may not be aware of any conflict between the attorney and the client. Furthermore, criminal defendants frequently elect not to testify. In some cases, it may be difficult to determine whether the defendant willingly accepted the attorney's advice or whether the attorney merely ignored the defendant's wishes. However, we are reluctant to hold that, in the absence of coercion, silent defendants may not have the opportunity to prove that their attorneys prevented them from exercising their constitutionally protected right to testify. Such a holding could have the unfortunate result of placing the burden upon defendants to speak up in court to make their desire to testify known. It is unreasonable to impose upon defendants the burden of personally informing the court that their attorney is not acceding to their wishes to testify. As recognized by the Seventh Circuit in *Underwood*, defendants might feel "too intimidated to speak out of turn." *Underwood*, 939 F.2d at 476. Requiring a defendant to object at trial against the wishes of counsel "assumes a sophisticated defendant who is knowledgeable in both constitutional rights and criminal trial process." Holscher, *supra*, at 264.

We therefore conclude that in order to prove that an attorney actually prevented the defendant from testifying, the defendant must prove that the attorney refused to allow him to testify in the face of the defendant's unequivocal demands that he be allowed to do so. In the absence of such demands by the defendant, however, we will presume that the defendant elected not to take the stand upon the advice of counsel. If a defendant is able to prove by a preponderance of the evidence that his attorney actually prevented him from testifying, he will have established

that the waiver of his constitutional right to testify was not knowing and voluntary.

## B

We turn next to the question of the appropriate remedy for a defendant who proves that his attorney actually prevented him from testifying. Robinson argues that defendants who can demonstrate that their attorneys actually prevented them from testifying are entitled to a new trial under two theories. First, Robinson argues that preventing a defendant from testifying deprives the defendant of effective assistance of counsel. Alternatively, Robinson contends that the deprivation of the defendant's constitutional right to testify is a structural defect requiring a new trial under both the Washington and the federal constitution.

■■ Courts in other jurisdictions have evaluated claims similar to Robinson's under either a constitutional analysis or an ineffective assistance of counsel analysis. *See, e.g., LaVigne v. State*, 812 P.2d 217 (Alaska 1991) (constitutional analysis); *Passos-Paternina*, 12 F. Supp. 2d 231 (constitutional analysis); *United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992) (ineffective assistance of counsel analysis); *Campos v. United States*, 930 F. Supp. 787 (E.D.N.Y. 1996) (ineffective assistance of counsel analysis). Of those courts that have considered these claims under a constitutional analysis, most have examined the defendants' proposed testimony in order to determine whether the deprivation of the defendants' right to testify was harmless error. *See Wright v. Estelle*, 549 F.2d 971 (5th Cir. 1977), *aff'd on reh'g*, 572 F.2d 1071 (1978); *Ortega v. O'Leary*, 843 F.2d 258 (7th Cir. 1988). *See also* Holscher, *supra*, at 245 ("The application of the harmless error standard to lower courts' decisions regarding a defendant's right to testify is the majority rule.").

We agree with those cases that hold that this question should be addressed as a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104

S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *United States v. Tavares*, 100 F.3d 995, 321 U.S. App. D.C. 381 (1996); *Brown v. Artuz*, 124 F.3d 73 (2d Cir. 1997); *Teague*, 953 F.2d 1525; *Campos*, 930 F. Supp. 787; *State v. Arguelles*, 921 P.2d 439 (Utah 1996); *State v. Flynn*, 190 Wis. 2d 31, 527 N.W.2d 343 (Ct. App. 1994). "Because it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected . . . the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland v. Washington*." *Teague*, 953 F.2d at 1534. *See also Brown*, 124 F.3d at 79. This approach "gives proper deference to the unique role played by counsel in the defendant's decision to testify." *Campos*, 930 F. Supp. at 792. Further, evaluating claims like Robinson's under the ineffective assistance of counsel analysis is appropriate since the defendant is not alleging that the government interfered with his right to testify. *Arguelles*, 921 P.2d at 441 n.3.[2]

Courts considering such claims under the ineffective assistance of counsel framework have used the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the defendant must prove both that the attorney's performance "fell below the objective standard of reasonableness" and that he was prejudiced by the attorney's deficient performance. *Id.* at 688, 694. The second prong of this test is met by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As to the first step in the *Strickland* analysis, we hold that a defendant who is able to prove that his attorney actually prevented him from testifying has satisfied *Strickland*'s first requirement. As noted above, it is well estab-

---

[2]Because we conclude that Robinson's claims should be evaluated under the ineffective assistance of counsel framework rather than a constitutional framework, we decline to consider Robinson's argument that the Washington Constitution affords greater protection than the United States Constitution to the defendant's right to testify.

lished that the defendant's right to testify is fundamental and may not be abrogated by defense counsel. *Thomas*, 128 Wn.2d 553. The decision whether or not to take the stand rests with the defendant. Therefore, an attorney who takes steps to abridge this right, against the will of the client, is providing deficient counsel. Preventing a client from testifying against the client's wishes falls below the objective standard of reasonable conduct for attorneys.

Robinson argues that we need not consider the second part of *Strickland*, the question of prejudice. According to Robinson, preventing a criminal defendant from testifying is per se ineffective assistance of counsel. He asserts that this court should not attempt to evaluate the potential effect of a defendant's testimony, but should rather presume that a defendant has been prejudiced when an attorney prevents his client from taking the stand. The concurrence/dissent agrees with Robinson's position, and would hold that a defendant is automatically entitled to a new trial upon the showing that his attorney prevented him from testifying.

Contrary to the concurrence/dissent's assertion, *State v. Hill*, 83 Wn.2d 558, 520 P.2d 618 (1974), does not stand for the proposition that a deprivation of a defendant's right to testify is per se prejudicial. Concurrence/Dissent at 771. In *Hill*, a defendant chose not to testify after a trial court erroneously ruled that reversed convictions could be used against the defendant for impeachment purposes. We concluded that "the involuntary loss of the right [to testify] *can be prejudicial* to an accused person's cause." *Id.* at 564 (emphasis added). Despite this language, we reversed Hill's conviction and remanded for a new trial without an evaluation of whether the defendant was actually prejudiced, because Hill made no offer of proof about the substance of his proposed testimony. However, *Hill* is distinguishable because it involved wrongful actions by a *court* that resulted in a deprivation of the defendant's right to testify. In contrast to the defendant in *Hill*, Robinson's right to testify was abridged, not by the court, but by actions of his

defense counsel. We decline to address the question of a remedy for defendants whose right to testify is abridged by the court, but note that that question is different from the one presented here.

*In re Detention of Haga*, 87 Wn. App. 937, 943 P.2d 395 (1997), the other case relied upon by the concurrence/ dissent, is also arguably distinguishable as involving a trial court, rather than attorney, error. More importantly, however, the precedent cited by the Court of Appeals in *Haga* does not support its conclusion that errors affecting a defendant's right to testify are "not generally susceptible to a harmless error analysis." *Haga*, 87 Wn. App. at 940. As support for this assertion, the court cites to the *dissenting opinion* in *United States v. Martinez*, 883 F.2d 750 (9th Cir. 1989) (Reinhardt, J., dissenting). The court fails to note, however, that the actual holding in *Martinez* is that a defendant waives the right to testify by failing to take the stand. *See Martinez*, 883 F.2d at 760. The *Haga* court's reference to *Luce v. United States*, 469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984), is equally inexplicable. In *Luce*, the United States Supreme Court noted that an appellate court must engage in harmless error analysis of a defendant's testimony in order to assess the impact of impeachment of a witness. *Luce*, 469 U.S. at 42. Given that neither of the cases cited by the Court of Appeals in *Haga* supports its conclusion that an error affecting a defendant's right to testify is per se prejudicial, we conclude that the decision is legally unsound.

We reject the argument that prejudice should be presumed in cases in which the attorney prevents the defendant from taking the stand. It is true that there are some circumstances so likely to prejudice the accused that prejudice will be presumed from the attorney's deficient performance. *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Examples of such circumstances are when the defendant is denied counsel at a critical stage of a trial and when the defendant's attorney entirely fails to subject the prosecution's case to adver-

sarial testing. *Id.* at 659-60. However, "[i]n some cases, the defendant's testimony would have no impact, or even a negative impact, on the result of his trial." *Tavares,* 100 F.3d at 998. Presuming prejudice would also have the practical effect of granting new trials to all defendants who were able to prove that their attorneys prevented them from testifying. Applying the *Strickland* test appropriately balances "the system's need for reliable results" and "the system's need for an end to litigation." *Flynn,* 527 N.W.2d at 352.[3]

Other courts that have analyzed these claims under an ineffective assistance of counsel standard have specifically rejected a per se reversal rule. *Tavares,* 100 F.3d 995; *Flynn,* 527 N.W.2d 343; *Arguelles,* 921 P.2d 439. Most of the federal courts that have considered the question of whether preventing a defendant from testifying is ineffective assistance of counsel have applied the two part *Strickland* analysis and have closely reviewed the record to determine whether the defendant was prejudiced by not taking the stand. *Campos,* 930 F. Supp. 787; *Brown,* 124 F.3d 73; *Robles,* 814 F. Supp. 1233; *Teague,* 908 F.2d 752.

We agree with these jurisdictions, and similarly decline to adopt a per se reversal rule. In order to prevail on his ineffective assistance of counsel claim, Robinson will therefore have to satisfy the *Strickland* test by proving that Kimberly's conduct was deficient (i.e., Robinson was actually prevented from testifying) and that his testimony would have a "reasonable probability" of affecting a different outcome. *See State v. McFarland,* 127 Wn.2d 322, 335,

---

[3]We recognize the problems inherent in an evaluation of the possible effect the defendant's testimony would have had on a trial. *See United States v. Butts,* 630 F. Supp. 1145, 1147 (D. Me. 1986); *Wright v. Estelle,* 572 F.2d 1071, 1082 (5th Cir. 1978) (Godbold, J., dissenting) (A judge "cannot weigh the possible impact upon the jury of factors such as the defendant's willingness to mount the stand . . . his candor and courtesy . . . his persuasiveness, his respect for court processes."). For this reason, we caution courts to engage in a careful analysis to gauge the potential effect of the defendant's testimony, resolving all doubts in favor of a new trial for the defendant.

899 P.2d 1251 (1995). If Robinson meets this burden, he will be entitled to a new trial.

## IV

A criminal defendant who can present substantial factual evidence that his attorney actually prevented him from testifying is entitled to an evidentiary hearing on the issue of whether the waiver of his right to testify was knowing and voluntary. We hold that Robinson has made a sufficient showing that his attorney actually prevented him from testifying to warrant such a hearing. Accordingly, we reverse the Court of Appeals and remand this case for an evidentiary hearing. At the evidentiary hearing, Robinson must prove by a preponderance of the evidence that his attorney actually prevented him from testifying.

Assuming that Robinson can establish that his attorney actually prevented him from testifying, the court must next consider whether Robinson was prejudiced by the attorney's deficient performance. Upon a sufficient showing that he was prejudiced by his attorney's actions, Robinson will be entitled to a new trial.

GUY, C.J., and SMITH, TALMADGE, and IRELAND, JJ., concur.

ALEXANDER, J. — (concurring in part, dissenting in part) I agree with the majority that we should reverse the Court of Appeals and send this case back to the trial court for an evidentiary hearing on the issue of whether Robinson's trial counsel interfered with his constitutional right to testify. I agree, also, that at that hearing the burden will be on Robinson to prove, by a preponderance of evidence, that his attorney actually prevented him from testifying. If he meets that burden the trial court must conclude that his trial counsel was ineffective.

I disagree with the majority, though, in its conclusion that in the event Robinson meets his burden of showing that his trial counsel prevented him from testifying, he

must assume an additional burden to establish that he was prejudiced by his counsel's ineffectiveness. In my view, when an attorney prevents a client from exercising a right so fundamental as the right to testify at trial, the defendant should not have to establish that the testimony that would have been presented would have made a difference in the outcome of the trial. Indeed, we have concluded in *State v. Hill*, 83 Wn.2d 558, 520 P.2d 618 (1974), that deprivation of a defendant's right to testify is 'per se prejudicial. The Court of Appeals has done likewise in *In re Detention of Haga*, 87 Wn. App. 937, 943 P.2d 395 (1997), *review denied*, 134 Wn.2d 1015, 958 P.2d 316 (1998).

The majority attempts to distinguish the aforementioned cases by pointing out that the abridgment of the right to testify there was by the trial court and not counsel. While the majority is correct in observing that in *Hill* we held that the trial court's evidentiary ruling interfered with the defendant's right to testify, it was clear that we held that the defendant does not have to show that he or she suffered prejudice in order to obtain a new trial. We said

[h]is testimony may or may not have influenced the jury in arriving at a verdict. In any event, he was entitled by constitutional and statutory provision to give his version of the events if he wished. The trial court's unfortunate ruling, which would have saddled the defendant's testimony with the taint of the two reversed convictions, prejudicially deprived him of a free and voluntary choice in the matter and literally compelled him to remain silent. He, therefore, should be entitled to a new trial.

*Hill*, 83 Wn.2d at 565. I fail to understand why counsel's interference with the same fundamental right should be held to a different standard. Contrary to the majority's efforts to confine *Hill* to its facts, we stated broadly there that the constitutional right to testify "should be unfettered and unhindered by any form of compulsion." *Hill*, 83 Wn.2d at 564. We did not add, as the majority would have us do, the words "by a trial judge" to the end of that sentence.

The *Haga* case out of Division Two of the Court of Appeals, contrary to the majority's assertion that it is "arguably distinguishable," Majority op. at 768, is directly on point.[4] There the defendant's counsel advised the trial court that he had doubts about his client's ability to testify truthfully. The attorney also expressed doubts about his client's competency. Although the trial court indicated there that it would "'go along'" with trial counsel's decision not to call his client as a witness, the moving force behind the deprivation of the right to testify was clearly trial counsel. *Haga*, 87 Wn. App. at 940. After reviewing this set of facts, the Court of Appeals concluded that a defendant cannot be deprived of his right to testify and that it is irrelevant that counsel refused to call him as a witness. In addressing the issue of prejudice, the Court of Appeals concluded that the right to testify is not generally susceptible to a harmless error analysis. I entirely agree.

The majority essentially concludes that deprivation of the right to testify is subject to a harmless error analysis. This conclusion flies in the face of the right of the defendant to testify in criminal prosecutions, a right guaranteed by our state constitution, article I, section 22, and by statute, RCW 10.52.040. Furthermore, the requirement that the defendant establish prejudice by an offer of proof as to his or her testimony places the defendant at a distinct disadvantage in having to disclose the substance of the testimony before actually testifying.

The majority expresses a concern that a presumption of prejudice in cases like this will "have the practical effect of granting new trials to all defendants who were able to prove that their attorneys prevented them from testifying." Majority op. at 769. What, I ask, is wrong with that? It would seem to me to be a fundamental proposition that persons should not be convicted at a criminal trial at which they were prevented from testifying. The majority's concern

---

[4]The majority must, in fact, also believe that this is so, because it overrules *Haga* concluding that "the decision is legally unsound." Majority op. at 768. I believe that the result in *Haga* is correct, even if I would have reached it by different means.

that floodgates will be opened to masses of these cases is, in my view, not warranted. Considering the high quality of the bar of this state, I am confident that it will be the rare case where an attorney acknowledges, as counsel did here, that "I refused to accede to my client's request and did not ask the court for permission to reopen the case and allow the defendant to testify." Supplemental Clerk's Papers at 81.

In short, I am satisfied that if Robinson establishes that his trial counsel interfered with his right to testify, it logically follows that he suffered prejudice as a result of the ineffective assistance he received from the attorney. A new trial should, therefore, be the result.

JOHNSON, MADSEN, and SANDERS, JJ., concur with ALEXANDER, J.