# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  45942-6-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| MATTHEW JACK LITTLE, | |
| Appellant. | |

BJORGEN, A.C.J. – A jury returned a verdict finding Matthew Jack Little guilty of felony

harassment of a criminal justice participant.  Little appeals his conviction, asserting that (1) the

State failed to present sufficient evidence in support of his conviction, (2) the prosecutor

committed misconduct during closing argument by commenting on his right to silence, (3)

defense counsel was ineffective for failing to object to the prosecutor's improper comments on

his right to silence, and (4) defense counsel was ineffective by indicating that he would refuse to

ask Little any questions if Little exercised his constitutional right to testify.

We hold that the State presented sufficient evidence in support of Little's conviction and

that the prosecutor did not commit misconduct during closing argument.  We further hold,

however, that Little has established that his defense counsel performed deficiently by preventing

Little from exercising his constitutional right to testify, but that the record is not sufficient to

determine whether such deficient performance prejudiced Little. Accordingly, pursuant to *State v. Robinson*, 138 Wn.2d 753, 982 P.2d 590 (1999), we remand for an evidentiary hearing at which the trial court must determine whether defense counsel's deficient performance prejudiced Little.

FACTS

In 2008, Bremerton Police Sergeant William Endicott contacted Little at Little's residence in response to a 911 call. During this contact, Little became "extremely upset" with Endicott. Verbatim Report of Proceedings (VRP) at 15. Little also became upset with Endicott when Endicott and several other officers contacted him in 2009. Following those contacts, Endicott would occasionally see Little walking at a ferry terminal but did not interact with him.

On July 1, 2013, Endicott went to a Safeway grocery store to purchase a lottery ticket. Endicott stopped at the store on his way to work and was wearing his civilian clothing. While in line to purchase a lottery ticket, Endicott heard someone behind him say, "It is you." VRP (Dec. 11, 2013) at 25. Endicott turned around, recognized that the person speaking was Little, and said, "How you doing, Mr. Little?" VRP (Dec. 11, 2013) at 26.

Little responded, "You're not so tough without your gun and your badge." VRP (Dec. 11, 2013) at 30. Because Endicott had not interacted with Little for several years, he believed that Little was mistaking him for someone else and asked Little, "Are you sure you know who I am?" VRP (Dec. 11, 2013) at 30. Little replied, "You're [expletive] Endicott, and you're not so tough without a gun and a badge." VRP (Dec. 11, 2013) at 30-31. Little challenged Endicott to a fight, "got right in [Endicott's] face," and told Endicott that "[h]e'd find [him] one day and he'd beat [Endicott's] ass." VRP (Dec. 11, 2013) at 33-34. Endicott told Little that he was going to call the police, to which Little responded, "You ever try to arrest me again, and I'll

[expletive] you up." VRP (Dec. 11, 2013) at 36. Endicott left the store and called the police. Based on this incident, the State charged Little with felony harassment of a criminal justice participant.

At a September 17, 2013 omnibus hearing, Little requested the trial court to appoint him new counsel based on a disagreement with defense counsel about Little's desire to testify at trial. In support, Little stated, "I want to take the stand. I want to speak the truth. [Defense counsel] has been disagreeable with that. So I got a problem with proceeding on right now." VRP (Sep. 17, 2013) at 4. When the trial court asked defense counsel if he believed he could continue representing Little, defense counsel stated, "I have nothing to add, Your Honor." VRP (Sep. 17, 2013) at 5. The trial court denied Little's request for the appointment of new counsel, noting that the trial was still over a month away.

At trial the State called one witness, Endicott, who testified consistently with the facts as stated above. Additionally, Endicott testified that he took Little's threats seriously. The State also presented security video footage showing the interaction between Little and Endicott at the Safeway store.

Little called one witness, Safeway employee Cali Mandak. Mandak testified that she was present during the interaction between Endicott and Little. Mandak stated that it appeared to her that Endicott and Little were engaged in a casual conversation that did not appear to be threatening. On cross-examination Mandak testified that, after Endicott left the store, Little told her, "People in law enforcement hide behind their badges" and that "[t]hey get away with things." VRP (Dec. 11, 2013) at 66. Mandak further testified that Little told her that he would like to get in a fight with the law enforcement officer, but only if the officer did not have his badge or gun. Following Mandak's testimony, the trial court excused the jury for a recess, and

defense counsel stated that he intended to rest his case when the jury returned to the courtroom.

After defense counsel announced his intention to rest his case, the following exchange occurred:

> [Little]: Your Honor, I don't know why my counsel—even if I took the stand, he says he won't ask me any questions, so I guess I won't take the stand.
> [Trial court]: [Defense counsel], do you need more time with Mr. Little?
> [Little]: It's not going to change anything, sir.
> [Trial court]: Okay. I'm asking [defense counsel].
> [Little]: I'm sorry.
> [Defense counsel]: We have discussed this at length, Your Honor.
> . . . .
> [Defense counsel]: Well, the conflict here is this: He has the right to testify, but I have a—the tactical decision of what questions to ask him, and he wants to get into issues that I believe are either irrelevant or harmful to the theory of the case.

VRP (Dec. 11, 2013) at 68-69.

Following this exchange, and without further addressing Little's concern regarding his desire to testify, the trial court called the jury back into the courtroom. The defense and the State then rested their cases, and the trial court again excused the jury. While counsel and the trial court discussed jury instructions, Little again interjected to inform the trial court of his desire to testify, and the following exchange took place:

> [Little]: Your Honor, I want to exercise my right to testify. Whether my attorney doesn't want to question me or not, I'm willing to take on what the prosecutor says.
> After hearing what is here, and all this is out there, at least I need to be able to look the jury in the eye . . . and say this is my side. I did not approach Sergeant Endicott like it's all been led on to believe. Sergeant Endicott spoke to me first. I did nothing wrong in this case. I just told the man that you got no business talking to me. You're the reason I moved out of the city limits. And I—I don't approve of how the defense has handled this so far. Everything is running around. No. At least at this point after lunch and listening to these jury instructions and whatnot, I would like to exercise my right and testify.
> [Trial court]: [Defense counsel], do you want to respond to those comments of your client in any way?
> [Defense counsel]: Your Honor, I would move to reopen the defense case in chief.
> . . . .

4

[State]: Well, Your Honor, we went over this at some length. The defense rested. I released what is a potential rebuttal witness at this point. I guess before we make a decision—I'm not sure what the legal standard is for asking to reopen a case at this point. There's—

[Defense counsel]: The standard is abuse of discretion.

. . . .

[Trial court]: Based on the record before me, [defense counsel], I am going to deny your motion to reopen the case. I believe there has been an ample opportunity for you and your client to converse about whether or not he's going to testify.

Mr. Little your—

[Little]: Your Honor, when I—

[Trial court]: Mr. Little, please don't interrupt me. Please don't interrupt me, Mr. Little.

You've indicated a desire to testify at this point. You've made an objection to the strategy of counsel. At this point I'm satisfied that the matter—both parties have rested, and at this point I'm satisfied that the case should not be reopened. You have had an ample opportunity to discuss this issue with counsel, and so I'm going to deny the motion to reopen by [defense counsel].

[Little]: At least for the record, I continue to try, but he says, "No, I will not ask you a question. I don't want you on the stand." And I've always wanted to be on the stand.

[Trial court]: Okay.

VRP (Dec. 11, 2013) at 93-95. Before calling the jury back into the courtroom, the trial court made oral findings on the record, stating:

I want to make a record before we proceed further and bring the jury in for instructions and closing.

Mr. Little did indicate an earnest desire to testify in this matter this afternoon and requested that I permit the parties to reopen the case, specifically the defense to reopen their case. I am making a couple of findings:

One, the two witnesses that previously testified in this case, Ms. Mandak and Sergeant Endicott, were under subpoena. They were released upon the parties resting this morning and are no longer under the authority of the court or under subpoena powers; and therefore, I do find that there is a prejudice to the prosecution by reopening the case.

[Defense counsel] also articulated this morning, for strategic reasons he would not be asking his client any questions should his client take the stand, and articulated that on the record as a matter of strategy.

Furthermore, we broke at 11:30. Mr. Little's request was [at] approximately 1:45. Over two hours had elapsed between the time of those discussions and when Mr. Little had asked the Court to reopen the case. So I'm making those findings.

VRP (Dec. 11, 2013) at 99-100.

5

During closing argument, the State argued:

> [State]: I don't know if Matthew Little feels justified. He didn't tell us—
> [Defense counsel]: Objection.
> [State]: —in his statement.
> [Trial court]: Sustained.
> [State]: He didn't tell us in his statement on the 1st of July 2013 when he was talking to Cali Mandak and when he was talking to Sergeant Endicott precisely why he was so angry. He didn't explain to either one of them, "This is the very particular reason why my anger is so high." But the point is, regardless of what it was that happened back in 2008 and 2009 that made his so angry, of all the things that he was entitled to do, he was not entitled to walk up to the detective and to threaten to beat his ass. He crossed the line.

VRP (Dec. 11, 2013) at 113-14. The jury returned a verdict finding Little guilty of felony harassment of a criminal justice participant.

After the jury returned its verdict, Little filed a pro se motion requesting in part to proceed with private counsel, or in the alternative, to proceed pro se, and for an evidentiary hearing on whether his constitutional right to testify had been violated by defense counsel's conduct.[1] The trial court held a hearing to address Little's motion on January 3, 2014. At the January 3 hearing, defense counsel stated:

> If I were substitute counsel, after talking with Mr. Little and myself, I think that I would want to have me testify.
> And I can tell the Court that what I'm going—I would testify to is that Mr. Little and I had a disagreement from the beginning about trial strategy, and that I didn't have any questions to ask Mr. Little on the stand that were going to further the trial strategy that I was pursuing. I don't know if that's error or not. And, quite frankly, at the—at the trial level, I'm not sure it makes that big of a difference. But at this point, I think that the appellate record is less than complete. And whether it's error or not I think is going to be determined by courts higher than this, but I would like Mr. Little to have a chance to have a complete record when he gets up there.

---

[1] Little's pro se motion also requested a continuance of his sentencing hearing and for the trial court to set aside his conviction.

VRP (Jan. 3, 2014) at 7. The trial court granted Little's motion for the substitution of counsel, but deferred ruling on his motion for an evidentiary hearing.

After the trial court appointed substitute counsel, that counsel moved for a new trial, asserting that Little's prior defense counsel rendered ineffective assistance by preventing Little from testifying. At the hearing on January 24 addressing the motion for a new trial,[2] substitute counsel argued that Little's prior defense counsel coerced him into not testifying by indicating he would not ask Little any questions and, thus, Little's waiver of the right to testify was involuntary. The trial court denied the motion for a new trial, concluding that Little failed to meet either prong of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Specifically, with regard to the deficient performance prong, the trial court stated:

> There is no evidence of force or coercion by trial counsel or the Court preventing the defendant from testifying. The defendant was informed that his lawyer would not ask him any questions, but the defendant made the choice, after knowing he had a right to testify, he could nevertheless take the stand and testify.

VRP (March 3, 2014) at 7. Regarding the prejudice prong, the trial court stated that Little had failed to proffer any evidence of what his testimony would have been and, thus, he could not establish a reasonable probability that the jury's verdict would have been different had he testified. Little appeals.

---

[2] Although Little's appellate brief characterizes this proceeding as an evidentiary hearing, neither party presented evidence at the hearing, and it is unclear from the record whether the parties were permitted to present evidence at the hearing.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Little first contends that the State failed to present sufficient evidence in support of his conviction for harassment of a criminal justice participant. Specifically, Little contends that the State failed to prove that (1) he made a "true threat" and (2) Endicott reasonably feared he would carry out his threat. Br. of Appellant at 26. We disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

To convict Little of harassment of a criminal justice participant as charged here, the State had to prove beyond a reasonable doubt that Little (1) without lawful authority (2) knowingly threatened to cause bodily harm immediately or in the future (3) to a criminal justice participant (4) because of actions taken or decisions made by the criminal justice participant while performing official duties, and that Little (5) by such words or conduct placed the criminal justice participant in reasonable fear that the threat would be carried out. RCW 9A.46.020(1)(a)(i), (2)(b)(iv). RCW 9A.46.020 criminalizes only "true threats." *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). "A 'true threat' is 'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm . . .'

of another person." *Kilburn*, 151 Wn.2d at 43 (alteration in original) (internal quotation marks omitted) (quoting *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001)).

"A true threat is a serious threat, not one said in jest, idle talk, or political argument." *Kilburn*, 151 Wn.2d at 43. "Whether a statement is a true threat or a joke is determined in light of the entire context, and the relevant question is whether a reasonable person in the defendant's place would foresee that in context the listener would interpret the statement as a serious threat or a joke." *Kilburn*, 151 Wn.2d at 46. Thus, "whether a true threat has been made is determined under an objective standard that focuses on the speaker." *Kilburn*, 151 Wn.2d at 44. In light of these considerations, RCW 9A.46.020 "does not require that the State prove that the speaker intended to actually carry out the threat." *Kilburn*, 151 Wn.2d at 48.

Here, the State presented evidence that Little approached Endicott and, without provocation, told Endicott, "You're not so tough without your gun and your badge," then got in Endicott's face, challenged him to a fight, and threatened to "beat [his] ass" and "fuck [him] up" at some point in the future. RP (Dec. 11, 2013) at 30-34, 36. Endicott testified that when Little made these threats, Little's manner in which he said them did not "appear to be humorous" and that he took Little's threats seriously. VRP (Dec. 11, 2013) at 31, 36. The State also presented evidence that Endicott and Little did not have a personal relationship with each other and that previous professional encounters between Little and Endicott in 2008 and 2009 left Little "extremely upset" with Endicott. VRP (Dec. 11, 2013) at 15. Taken together and viewed in a light most favorable to the State, this evidence was sufficient for a jury to find that a reasonable criminal justice participant in Endicott's position would view Little's threats as serious, and not simply made in jest. Accordingly, we hold that the State presented sufficient evidence from

which a jury could find that Little expressed a "true threat" and that Endicott's fear that Little would carry out his threats was reasonable.

## II. PROSECUTORIAL MISCONDUCT

Next, Little contends that the prosecutor committed misconduct during closing argument by commenting on Little's Fifth Amendment and article I, section 9 right to silence. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Again, we disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). When a defendant fails to object to the prosecutor's improper statements at trial, such failure constitutes a waiver of prosecutorial misconduct claims unless the prosecutor's statements were "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). In determining whether a prosecutor's misconduct warrants reversal, we consider its prejudicial nature and cumulative effect. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). We review a prosecutor's remarks during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

The Fifth Amendment of the United States Constitution and article I, section 9 of the Washington Constitution "guarantee a criminal defendant the right to be free from self-incrimination, including the right to silence." *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). Due process prohibits the State from commenting on a criminal defendant's post-

arrest silence. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)). Additionally, "a defendant's pre-arrest silence, in answer to the inquiries of a police officer, may not be used by the State in its case in chief as substantive evidence of defendant's guilt." *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). Further, it is misconduct for the State to argue to the jury that the defendant's pre-arrest silence "was an admission of guilt." *Lewis*, 130 Wn.2d at 707.

An impermissible comment on silence requires more than merely referencing the silence. *State v. Slone*, 133 Wn. App. 120, 127, 134 P.3d 1217 (2006). We must consider "'whether the [State] manifestly intended the remarks to be a comment on that right.'" *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).

Here, the prosecutor argued at closing, "I don't know if Matthew Little feels justified. He didn't tell us—." VRP (Dec. 11, 2013) at 113. Defense counsel objected to this partial statement and the trial court sustained the objection. Absent context, it does appear that the State may have begun to comment on Little's constitutionally protected right of silence. However, following the trial court's ruling sustaining defense counsel's objection, the State continued:

> He didn't tell us in his statement on the 1st of July 2013 when he was talking to Cali Mandak and when he was talking to Sergeant Endicott precisely why he was so angry. He didn't explain to either one of them, "This is the very particular reason why my anger is so high." But the point is, regardless of what it was that happened back in 2008 and 2009 that made him so angry, of all the things that he was entitled to do, he was not entitled to walk up to the detective and to threaten to beat his ass. He crossed the line.

RP (Dec. 11, 2013) at 114. Defense counsel did not again object.

11

Viewing the prosecutor's argument in context, it is clear that the prosecutor did not comment on Little's constitutional right to silence. Rather, the prosecutor's argument merely referred to Little's threatening statements to Endicott during their encounter at the Safeway store and illustrate how, during those statements, Little did not reveal why he was then presently angry with Endicott. The prosecutor's argument suggested that, because Little did not inform Endicott why he was then presently angry with him, the jury could infer that Little's anger and motive for uttering his threats was related to his previous encounters with Endicott in 2008 and 2009, while Endicott was performing official police duties. This, in turn, suggested that Little's threats were in response to Endicott's actions as a criminal justice participant performing official duties, a necessary element that the State had to prove to secure a conviction. *See* RCW 9A.46.020(2)(b)(iv).

Because Little fails to show that the State had commented on his constitutional right to silence, he cannot demonstrate any improper conduct on the part of the prosecutor, let alone that the prosecutor's conduct was flagrant and ill-intentioned with regard to the portion of the closing argument to which he did not object. Additionally, because Little fails to show that the prosecutor committed misconduct, he cannot demonstrate that his counsel was ineffective for failing to object to the challenged portion of the prosecutor's closing argument.

### III. RIGHT TO TESTIFY/INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Little contends that his defense counsel violated his constitutional right to testify by indicating that he would not ask Little any questions if Little chose to exercise his right. Pursuant to *Robinson*, 138 Wn.2d 753, we analyze this claim under the ineffective assistance of counsel test and hold that defense counsel performed deficiently by preventing Little from

testifying at trial. We remand for an evidentiary hearing to determine whether defense counsel's deficient performance prejudiced Little.

Under our federal and state constitutions, criminal defendants have a fundamental right to testify, which right may not be abrogated by defense counsel. *Robinson*, 138 Wn.2d at 758. "The defendant, not trial counsel, has the authority to decide whether or not to testify." *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). Defense counsel violates a defendant's right to testify if defense counsel's conduct "actually prevented [the defendant] from testifying." *Robinson*, 138 Wn.2d at 762. We address claims that defense counsel violated a defendant's right to testify under the ineffective assistance of counsel test, which test requires the defendant to show that defense counsel performed deficiently and that such deficient performance prejudiced the defendant. *Robinson*, 138 Wn.2d at 767. As applied in this context, "a defendant who is able to prove that his attorney actually prevented him from testifying" meets the deficiency prong of the ineffective assistance of counsel test. *Robinson*, 138 Wn.2d at 766-67. A defendant may satisfy the prejudice prong if the defendant proves that his or her "testimony would have a 'reasonable probability' of affecting [sic] a different outcome." *Robinson*, 138 Wn.2d at 769. If the defendant satisfies both prongs, he or she will be entitled to a new trial. *Robinson*, 138 Wn.2d at 770.

Our Supreme Court has held that a defendant may demonstrate that defense counsel actually prevented him or her from testifying by showing that defense counsel used coercion to prevent the defendant from testifying. *Robinson*, 138 Wn.2d at 762. Examples of such coercion include telling the defendant that he or she is legally forbidden from testifying, threatening to withdraw from representation if the defendant elects to testify, or misinforming the defendant about the consequences of testifying. *Robinson*, 138 Wn.2d at 762. Additionally, even absent

13

coercion, defense counsel can prevent a defendant from testifying by refusing to call the defendant as a witness when counsel knows that the defendant wants to testify. *Robinson*, 138 Wn.2d at 762-63. "If a defendant is able to prove by a preponderance of the evidence that his attorney actually prevented him from testifying, he will have established that the waiver of his constitutional right to testify was not knowing and voluntary." *Robinson*, 138 Wn.2d at 764-65.

A.    Deficient Performance

Although it appears that no court has addressed the question of whether defense counsel's refusal to ask the defendant any questions equates with a denial of the defendant's right to testify, the State admits that it cannot "distinguish[] between a refusal to ask *any* questions and an outright denial of the right to testify." Br. of Resp't at 17 (alteration in original). We, too, cannot distinguish between a refusal to ask a defendant any questions and an outright denial of the right to testify. We conclude that, in essence, such conduct is tantamount to a refusal to call the defendant as a witness.

In *Ferguson v. Georgia*, 365 U.S. 570, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961), the United States Supreme Court addressed a state statute allowing a criminal defendant to give unsworn testimony, but preventing defense counsel from asking the defendant any questions. Although not addressing the precise issue before us, the *Ferguson* court highlighted the fundamental role defense counsel's questioning of the defendant plays in giving life to the defendant's constitutional right to testify, stating that absent questioning from defense counsel, a defendant "'has been set adrift in an uncharted sea with nothing to guide him, with the result that his statement in most cases either does him no good or is positively hurtful.'" 365 U.S. at 593 (quoting 7 Ga.B.J. 432, 433 (1945)). The *Ferguson* Court further stated:

> The tensions of a trial for an accused with life or liberty at stake might alone render
> him utterly unfit to give his explanation properly and completely. Left without the

"guiding hand of counsel," *Powell v. State of Alabama*, [287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed 158 (1932)], he may fail properly to introduce, or to introduce at all, what may be a perfect defense. ". . . though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

365 U.S. at 594-95 (alteration in original).

Although the *Ferguson* Court did not address whether defense counsel's decision to refrain from asking questions of a defendant denies the defendant's constitutional right to testify, the reasoning in *Ferguson* informs our decision that such conduct would be tantamount to a refusal to call the defendant as a witness. Accordingly, following *Robinson* and *Ferguson*, where defense counsel knows the defendant wishes to testify, we hold that defense counsel's refusal to ask the defendant any questions violates the defendant's constitutional right to testify.

The State contends that, even assuming that a refusal to ask a defendant questions amounts to a denial of the right to testify, the record is unclear as to whether Little's defense counsel actually indicated such a refusal. We disagree. Here, before defense counsel rested its case, Little informed the trial court that he wanted to testify but that his defense counsel informed him that he would refuse to ask Little any questions if he testified. When addressing the trial court, defense counsel did not refute Little's assertion, instead indicating that he was having a conflict with Little over trial tactics. The trial court later orally found on the record that "for strategic reasons [defense counsel] would not be asking his client any questions should his client take the stand." VRP (Dec. 11, 2013) at 99. Defense counsel did not refute this finding. Finally, in addressing Little's post-trial pro se motion, defense counsel stated that he "didn't have any questions to ask Mr. Little on the stand that were going to further the trial strategy that [defense counsel] was pursuing." RP (Jan. 3, 2014) at 7.

We conclude that the above adequately establishes that defense counsel refused to ask Little any questions if Little elected to testify at trial. *Robinson*, 138 Wn.2d at 764. Because

Little repeatedly expressed his unequivocal desire to testify in his defense, such conduct by defense counsel violated his constitutional right to testify. *Robinson*, 138 Wn.2d at 762-63. We thus hold that Little has satisfied his burden of showing his defense counsel performed deficiently.

B.      Resulting Prejudice

To be entitled to a new trial, Little must also establish that his defense counsel's deficient performance in preventing him from testifying prejudiced him; prejudice is not presumed. *Robinson*, 138 Wn.2d at 769-70. To establish prejudice, Little must demonstrate "that his testimony would have a 'reasonable probability' of affecting a different outcome." *Robinson*, 138 Wn.2d at 769-70 (quoting *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). Here, the record does not establish what Little's testimony would have been had defense counsel not prevented him from testifying. Although the trial court held a hearing at which it found that Little failed to proffer evidence of what he "could have testified to [that] would [have] raise[d] a reasonable probability that the verdict would have been different," the parties did not present evidence at this hearing, and it is unclear whether the parties were permitted to present evidence at the hearing. RP (3/3/14) at 4. Accordingly, we remand for an evidentiary hearing comporting with *Robinson* to determine whether Little was prejudiced by being prevented from testifying. At this hearing, Little may make an offer of proof as to the substance of his proposed testimony.

No. 45942-6-II

138 Wn.2d at 567-70.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.