[No. 42606. En Banc. March 28, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. JIMMY HILL, *Appellant.*

*Pat Cockrill* (of *Hovis, Cockrill & Roy*), for appellant (appointed counsel for appeal).

*Lincoln E. Shropshire, Prosecuting Attorney,* and *Adam Moore, Deputy,* for respondent.

HAMILTON, J.—The defendant-appellant, Jimmy Hill, was convicted of the crime of unlawful possession of a narcotic drug. His appeal presents two questions. Was the defendant properly identified at trial? Did the trial court commit error by ruling in advance that the defendant, if he

took the stand, could be cross-examined as to two prior convictions which had been reversed and dismissed on appeal?

The facts are simple. Between 3 and 4 a.m. on May 15, 1971, an officer was directed to a residence in Yakima, Washington, by a person who had lodged a complaint against the defendant relating to a weapon. Upon approaching the residence, the officer and the complainant observed the defendant crossing the street toward the premises. The officer pulled up with the patrol car, got out, and started after the defendant. As the defendant moved up a dimly-lit, graveled driveway adjacent to the residence, the officer called to him to halt, unholstered his revolver, and advanced toward the defendant who was then watching the officer, while still moving slowly backward up the driveway. The officer, when about 10 to 15 feet from the defendant, noticed him bring a facial tissue to his face and then drop it along with another object which the officer could not identify. The defendant was placed under arrest, searched, handcuffed, and placed in the patrol car. No weapon or contraband was found upon him.

On the way to the patrol car, the officer picked up the facial tissue. In the meantime, an occupant of the residence had come out to the area involved. After placing the defendant in the patrol car, the officer returned to the place where he believed the facial tissue had been dropped and, upon inspection with his flashlight, found two small capsules about 5 or 10 feet from where he thought the tissue had fallen. The capsules contained a mixture of lactose and heroin.

The defendant was charged with a weapons offense and, by separate charge, with unlawful possession of a narcotic drug. Apparently, he was convicted of the weapons offense prior to his trial in the instant case, for the judgment and sentence in this case reads, in part: "said sentence to run consecutively after sentence in Yakima Cause No. 15802."

The first assignment of error relates to the failure of the state to provide a specific in-court identification of the defendant. Thus, defendant contends the trial court improperly entered judgment and sentence, although he concedes that during trial "[n]either the prosecution nor the defense considered the matter of identification one of particular significance."

■ It is axiomatic in criminal trials that the prosecution bears the burden of establishing beyond a reasonable doubt the identity of the accused as the person who committed the offense. 1 H. Underhill, *Criminal Evidence* § 125 (5th ed. P. Herrick 1956, Supp. 1970); 1 *Wharton's Criminal Evidence* § 16 (13th ed. C. Torcia 1972). Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated. 1 H. Underhill, *Criminal Evidence, supra.*

In the case at bench, the defendant was present in the courtroom at all pertinent times throughout the course of the trial, during which there were numerous references in the testimony to "the defendant" and to "Jimmy Hill." The arresting officer testified that it was "the defendant" whom he observed at the scene of the arrest, that he had ordered "the defendant" to halt, and that it was "the location where the defendant was finally stopped that the Kleenex was found." The jury verdict was in the form: "We, the Jury . . . , find the defendant [Jimmy Hill] GUILTY . . ."

Although we do not recommend the omission of specific in-court identification where feasible, we are satisfied that the evidence as it developed in the instant case was adequate to establish the defendant's identity in connection with the offense for which he stood accused.

The second claim of error revolves about the trial court's ruling that cross-examination of the defendant with respect to two prior convictions (which had been reversed and

dismissed on appeal well in advance of trial)[1] would be permitted if the defendant took the stand as a witness in his own behalf. Following this ruling, the defendant elected not to take the stand. Two issues emerge, *i.e.*, was the trial court's ruling erroneous and, if so, was it prejudicial?

In reaching his ruling relative to using the convictions, the trial judge relied upon *State v. Johnson*, 141 Wash. 324, 251 P. 589 (1926), and *State v. Robbins*, 37 Wn.2d 492, 224 P.2d 1076 (1950). In each of these cases, this court sustained the introduction of convictions for impeachment purposes which at the time of their introduction were pending and unresolved on appeal. The convictions were presumed valid until the appellate court held otherwise.

Such, however, is not the situation here. The prior convictions had been reversed and dismissed for lack of a crime as a matter of law. The convictions were thereby voided and stood for naught. To permit their use for impeachment purposes had the defendant taken the stand in his own defense would clearly have been prejudicial error. *Cf. Loper v. Beto*, 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014 (1972).

The state contends, however, that since the defendant did not take the stand and submit to cross-examination, the record is incomplete and inadequate to show prejudice. This is so, it is argued, because the prosecuting attorney may not have taken advantage of the trial court's ruling, or, as hinted in oral argument, there could have been more compelling, though unrevealed, reasons for the defendant's election not to take the stand.

Trial in this cause commenced on September 29, 1971, and concluded on September 30, 1971. On September 29, defendant's counsel submitted a proposed instruction reading as follows:

> *The prior criminal conviction* of the defendant is admitted into evidence solely for your consideration in evaluating the credibility of the defendant as a witness. *It*

---

[1]*State v. Hill*, 3 Wn. App. 715, 477 P.2d 29 (1970), and *State v. Hill*, 5 Wn. App. 451, 487 P.2d 654 (1971).

is not evidence of the defendant's guilt of the offense with which he is charged. You must not draw any inference of guilt against the defendant *from his prior conviction*. You may consider *it* only in connection with your evaluation of the credence to be given his present testimony in court.

(Italics ours.)

At the conclusion of the state's case a recess was taken, following which counsel for the defendant, in the absence of the jury, stated the following for the record:

Mr. Dobbs: If the Court please, at this time I would like to call attention of the Court to our conference in Chambers, *at which time I indicated that the defendant, Mr. Hill, at that time was going to take the witness stand,* and accordingly he will subject himself to cross examination and also to a disclosure of any convictions; and in this regard, if I have the date correct, in 1968 he was convicted of illegal sale of narcotics, which was at that time marihuana. That case was subsequently dismissed on the basis of the change in the law and, therefore, it was our position that the prosecution could not show that as a prior conviction to affect the credibility of the defendant. Also, in 1969 he was convicted of second degree burglary. That case also was appealed and the Supreme Court reversed the decision and dismissed that case also; and it was our position that neither could be shown as a prior conviction of the defendant to affect his credibility as a witness.

Now, it is my understanding from your discussion in Chambers that it is your ruling that even though these two cases have been subsequently dismissed since they were submitted to a jury, they can still be shown as prior convictions affecting the credibility of the witness, and in this case *the defendant, in light of that ruling, has reconsidered testifying and would probably decline testifying if these two convictions can be shown,* so we wish the record to show that this is the ruling, so it will be on the record.

(Italics ours.)

The trial judge, after stating the basis upon which he predicated his ruling with respect to the two reversed convictions, said:

I *would rule, and will rule* that these prior convictions can be used to impeach the credibility of the defendant. I recognize that this puts the defendant to a choice as to whether he wishes to take the stand in explanation and have these matters brought out, or not take the stand, but be that as it may, the State is entitled, under STATE vs ROBBINS, to mention those convictions.

(Italics ours.)

The defendant, after recalling the arresting officer as a witness, then rested his case without taking the stand.

It is reasonable to assume, from the singular tenor of the instruction proffered by the defendant and from the statement of defendant's counsel, that the defendant initially intended to take the stand anticipating, perhaps, that he would be confronted only with the conviction referred to in the instant judgment and sentence. Seemingly he was willing to assume the impact of that conviction upon his credibility as a witness. When, however, the trial court's ruling projected the potentially devastating effect of two additional convictions into his prospective cross-examination—one of which involved a charge similar in nature to the one he was facing—he was then, as a practical matter, compelled to reevaluate his position and very conceivably forced to refrain from testifying. He was thus left to take his chances that the jury would attach no significance to his silence.

The right of an accused person to remain silent has long been recognized in the common law and came to this country and into our federal constitution with the colonists. The right of an accused person to testify in his own behalf, however, is not a part of the common law nor did it find its way expressly into the United States Constitution. It came into our American jurisprudence primarily by way of state and federal statutes. *Wilson v. United States,* 149 U.S. 60, 37 L. Ed. 650, 13 S. Ct. 765 (1893); *McKnight v. United States,* 115 F. 972 (6th Cir. 1902); 1 S. Greenleaf, *A Treatise on the Law of Evidence* 467-68 (15th rev. ed. 1892); 3

S. Greenleaf, *A Treatise on the Law of Evidence* 54-57 (15th rev. ed. 1892).

In our state, the framers of our constitution seemingly were not content to leave the preservation of the right to testify in one's own behalf up to the legislature, for, after providing in article 1, section 9, that an accused could not be compelled to give evidence against himself, they went on in article 1, section 22—now amendment 10—and provided:

In criminal prosecutions the accused shall have the right . . . to testify in his own behalf, . . .

Additional emphasis was also placed upon the right by statute—RCW 10.52.040—which reads, in part:

Any person accused of any crime in this state . . . may, in the examination or trial of the cause, offer himself, or herself, as a witness . . .

The right of an accused person to remain silent has been accorded great and careful deference by our courts. Numerous familiar safeguards have been judicially erected to insure and protect against any compulsory waiver of that right, and its involuntary loss during the course of a trial constitutes a cause for retrial, *e.g.*, *State v. O'Donnell*, 191 Wash. 511, 71 P.2d 571 (1937). The right to testify in one's own behalf if exercised, of course, amounts to a waiver of the right to remain silent, and the free and voluntary election so to do, or not to do, should be unfettered and unhindered by any form of compulsion. Certainly, the involuntary loss of the right can be prejudicial to an accused person's cause, for, in many instances, it constitutes the only evidence available to him.

In the instant case, the evidence of the defendant's prior possession of the two capsules discovered by the officer in the driveway was partially, at least, circumstantial, since the officer could not identify the object he testified the defendant dropped with the facial tissue. Furthermore, no evidence was offered concerning the activity of the occupant of the house present in the area during the time the de-

fendant was being escorted to the patrol car. The defendant most assuredly had the right to explain the tissue incident and to disclaim, if such were the case, any association with the capsules. His testimony may or may not have influenced the jury in arriving at a verdict. In any event, he was entitled by constitutional and statutory provision to give his version of the events if he wished. The trial court's unfortunate ruling, which would have saddled the defendant's testimony with the taint of the two reversed convictions, prejudicially deprived him of a free and voluntary choice in the matter and literally compelled him to remain silent. He, therefore, should be entitled to a new trial just as surely as he would have been had some comment of the prosecuting attorney or the trial judge compelled him to involuntarily take the stand to his prejudice.

It is no answer to say that the procedure followed in the trial court was inadequate and the record insufficient to show prejudice. Ideally, the record could and should have been more complete as to what transpired during the in camera conference between the trial judge and counsel.[2] Nevertheless, the record as it stands clearly reflects that there was no doubt in counsel's mind, or in the trial judge's mind, as to the issue the trial judge was ruling upon or how he would rule upon that issue should the defendant take the stand. Likewise, it would be inappropriate to hypothesize that, had the defendant taken the stand, the prosecuting attorney might not have sought to impeach his credibility with the reversed convictions. The trial judge's ruling presented a standing invitation to the prosecuting attorney which, very likely, he would not have ignored.

Finally, it would also be inappropriate to go outside the record and speculate that there may have been other matters which influenced the defendant's decision to give up his intent to take the stand. Defendant's trial counsel is a

---

[2] We recognize the occasional necessity during a trial of obtaining a judicial ruling out of the presence of the jury. We do not, however, commend a practice of obtaining such rulings out of the presence of the court reporter.

reputable and ethical attorney. It cannot be assumed that trial counsel, simply to create appealable error, would: (a) propose the specific instruction set out hereinbefore; (b) advise the trial judge in chambers and on the record that the defendant wished to take the stand; and (c) indicate that the defendant was refraining therefrom because of the trial judge's ruling; all with knowledge that the defendant never, in any event, intended to take the stand.

The judgment and sentence is reversed, and the cause is remanded for a new trial.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.