# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70167-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ERIC LEE DAVIS, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 4, 2014 |
| | ) | |

APPELWICK, J. — A jury convicted Davis of felony violation of a no-contact order. Davis claims the State failed to prove that he was the same person named in the no-contact order he allegedly violated and in the prior judgment relied upon to establish the felony offense. He also claims the trial court erred in admitting testimony about police officers' awareness of the existence of a no-contact order. We conclude that sufficient evidence supports the jury's determination that the defendant was the same person that was identified in the admitted court documents. Davis also fails to establish that the challenged testimony about police officers' knowledge of the no-contact order was prejudicial in view of the fact that the order itself was admitted at trial. We affirm.

## FACTS

On August 13, 2012 Seattle Police Officer Matthew Lilje responded to a 911 call reporting that a man was forcing a woman against her will into a silver Buick with a bumper sticker containing the letters "V" and "J".

Officer Lilje was parked about five blocks away from where the call originated. Less than a minute after hearing the call, Officer Lilje intercepted a Buick matching the 911 caller's description. There were two men and one woman in the car. When asked, the female passenger provided a name and date of birth, but there were no records associated with that information and the name appeared to be misspelled.

Meanwhile, another police officer, William Griffin, arrived and spoke to the male back seat passenger. The passenger provided Officer Griffin with a temporary driver's license with the name Eric Davis and a photograph. The photograph appeared to depict the person Officer Griffin was speaking with. Officer Griffin explained the nature of the 911 call and why the police had stopped the car. Davis told the officer that he had known the female passenger for about five years, that the caller was "mistaken" about their interaction, and explained that they were only "playing around."

Once Officer Lilje learned Davis's name, he was able to discover through his computer and radio dispatch that there was a protection order in place prohibiting contact between Eric Davis and Sabrina Anderson, who had a birth date of January 1, 1968. The information on the computer in Davis's patrol car also provided "descriptors" of both Davis and Anderson, which matched the male and female passengers.[1] When confronted with the information about the no-contact order, the female passenger denied that she was Sabrina Anderson.

Officer Lilje determined that the passenger was, in fact, Sabrina Anderson after he located a photograph of Anderson on his computer, which appeared to be the same

---

[1] In his testimony, the officer did not provide any details about the "descriptors."

person as the female passenger. The passenger also turned to look at him when the officer called out the name "Sabrina."

The officers arrested Davis for violating the no-contact order. When they did so, Anderson tried to interfere with the arrest. The police then also arrested Anderson for false reporting and obstruction. The booking record for Anderson's arrest listed her name and January 1, 1968 birth date.

The State charged Davis with felony violation of a court order. At trial, the State presented the testimony of the three officers involved in stopping and arresting Davis and Anderson. Neither Davis nor Anderson testified at trial.

The State admitted as an exhibit a certified copy of a judgment and sentence showing that Eric Lee Davis was convicted in 2010 of two counts of felony violation of a no-contact order. The State also admitted a certified copy of the 2010 no-contact order entered as a result of that judgment prohibiting contact between Eric Lee Davis and Sabrina M. Anderson for five years, until June 25, 2015.

The jury convicted Davis. The trial court imposed a sentence under the Drug Offender Sentencing Alternative. Davis appeals.

DISCUSSION

I. Sufficiency of the Evidence

Davis challenges the sufficiency of the evidence supporting his conviction. He concedes that the evidence was sufficient to prove that the Eric Davis identified in the 2010 judgment is the same person named in the no-contact order. Those documents bear the same signature, the same case number, and reveal that the no-contact order was imposed on Eric Davis as a condition of the 2010 judgment sentence. But, Davis

3

contends there was no evidence from which the jury could conclude that he is the same Eric Davis named in those court documents.

In considering a challenge to the sufficiency of the evidence, this court construes the evidence in the light most favorable to the State and asks whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A defendant who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from the evidence. Id. Direct and circumstantial evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Credibility issues are for the trier of fact and are not subject to review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Due process requires that the State prove every element of the charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). There are three essential elements of the crime of violation of a no-contact order: (1) willful contact with another, (2) the prohibition of such contact by a valid no-contact order, and (3) the defendant's knowledge of the no-contact order. State v. Washington, 135 Wn. App. 42, 49, 143 P.3d 606 (2006); see RCW 26.50.110. Violation of a no-contact order under chapter 10.99 RCW becomes a felony if the offender has at least two previous convictions for violating the provisions of an order issued under chapter 26.50, 7.90, 9.94A, 9A.46, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW. RCW 26.50.110(5).

In addition, the State has the burden to establish the "identity of the accused as the person who committed the offense." State v. Hill, 83 Wn.2d 558, 560, 520 P.2d 618

(1974). "Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated." Id.

In Huber, Division Two of this court held, "[W]hen criminal liability depends on the accused's being the person to whom a document pertains . . . the State must do more than authenticate and admit the document; it also must show beyond a reasonable doubt 'that the person named therein is the same person on trial.'" State v. Huber, 129 Wn. App. 499, 119 P.2d 388 (2005) (quoting State v. Kelly, 52 Wn.2d 676, 678, 328 P.2d 362 (1958)); see also State v. Santos, 163 Wn. App. 780, 784, 260 P.3d 982 (2011). To satisfy this obligation, the State cannot rely on an "identity of names alone." Huber, 129 Wn. App. at 502. Rather, it must show by evidence independent of the documents "that the person named therein is the defendant in the present action." Id.

In Huber, the State presented only documentary evidence to establish the crime of bail jumping. Id. The State introduced the following documents into evidence: a criminal information charging Huber with crimes, an order directing Huber to appear in court on a certain date, clerk's minutes indicating that Huber failed to appear on that date, and a bench warrant for Huber's arrest. Id. at 500-501. "The State did not call any witnesses or otherwise attempt to show that the exhibits related to the same Wayne Huber who was then before the court." Id. at 501. This court reversed the conviction. Id. at 504. Noting that many people have the same name, the court concluded that the evidentiary flaw was the failure to provide any link between the paperwork from the first case with the defendant currently on trial for bail jumping. Id. at 502.

5

Likewise, in <u>Santos</u>, Heraquio Santos was charged with felony driving under the influence (DUI), which required the State to prove that the defendant had been convicted of previous DUIs within a specific time frame. 163 Wn. App. at 782. The State presented certified copies of prior judgments and sentences bearing the name "Santos, Heraquio" or "Heraquio Santos." <u>Id.</u> at 785. However, the State presented no evidence to link those judgments to the defendant on trial and this court reversed the conviction. <u>Id.</u> at 785-86.

Davis acknowledges that here, the 2010 judgment contains certain identifying information for "Eric Davis," including a date of birth, race, gender, and fingerprints. The jurors could use some of this information to compare with the defendant who appeared in the courtroom. But, Davis claims that this evidence was insufficient in the absence of evidence of "comparison between fingerprints, booking or other photographs, dates of birth, or addresses" or "witness testimony based on personal knowledge that the Eric Davis named in the no[-]contact order and judgment is the same Davis that was on trial." But, contrary to Davis's argument, while independent evidence of common identity may include booking photographs, fingerprints, or eyewitness identification, no authority establishes that this is type of evidence is the exclusive means to establish identity.

Viewed in the light most favorable to the State, there was sufficient evidence to convince a rational trier of fact that Eric Davis, the defendant, was the same Eric Davis named in the no-contact order and the prior judgment. The State did not rely solely on the fact that documents bore the identical name, "Eric Davis," to establish that the defendant was the same person named in those documents. There was a significant

amount of circumstantial evidence the jury could rely upon to reach this conclusion. When the police stopped the Buick, Davis explained that the 911 caller misinterpreted the interaction between himself and the female passenger. The female passenger attempted to conceal her identity. Police officers testified that at the scene of the arrest, they were able to identify the two passengers as Sabrina Anderson and Eric Davis, based on the identification card Davis provided and a photo of Anderson. They also learned that Eric Davis and Sabrina Anderson were subject to a no-contact order and that "descriptors" of those two individuals matched the appearance of the male and female passengers. Davis admitted to knowing Anderson for a substantial length of time. Anderson tried to prevent Davis's arrest. This evidence all supports the conclusion that the defendant Eric Davis who was arrested in the company of Anderson, was the same person identified in the judgment and no-contact order. In contrast to the circumstances in Huber and Santos, the State proved that the defendant was the same Eric Davis named the court documents by more than "identity of names alone." Huber, 129 Wn. App. at 502.

## II. Hearsay

Over Davis's hearsay objection, the trial court admitted Officer Lilje's testimony that, after Davis provided his name, the officer learned through a radio transmission and his computer of the existence of a no-contact order listing Eric Davis "as a respondent." During another police officer's testimony, Davis objected to the prosecutor's question about whether, at the scene of the arrest, the officer was "aware that there was a no[-]contact order between" Davis and Anderson. After the court overruled the objection,

7

the officer answered, "Yes." Davis contends that the trial court erred in admitting this testimony and that the evidence materially affected the verdict.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). We review a trial court's evidentiary rulings for abuse of discretion. State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008). Abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons. Id. An evidentiary error is grounds for reversal only if it results in prejudice. State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). An error is prejudicial if, within reasonable probabilities, it materially affected the outcome of the trial. Id.

The State argues that the testimony was admissible, not for the truth of the matter asserted, but to explain the course of the investigation, why the officers sought to establish the female passenger's identity, and why they eventually arrested Davis. But, even assuming for the sake of argument that the testimony about the officers' awareness of a no-contact order was hearsay, Davis fails to demonstrate that the error was not harmless. He provides no persuasive explanation of how the evidence was not cumulative in light of the fact that the testimony he identifies provided no more information than the properly admitted no-contact order itself. The testimony that the officers learned of the existence of a no-contact order between two people named Eric Davis and Sabrina Anderson is precisely the information established by the document. Accordingly, this argument fails.

Finally, Davis has filed a pro se statement of additional grounds for review. He alleges a violation of his right to confront witnesses. However, he fails to adequately

inform the court of the nature and occurrence of the alleged error.  See RAP 10.10(c).

We are unable to review the claim of error.

Affirmed.

WE CONCUR: