**FILED**
**SEPT 18, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BRIAN ROMER, | ) | |
| | ) | No. 31806-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE UNIVERSITY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent: | ) | |

KORSMO, J. — Brian Romer challenges the administrative finding that he sexually assaulted another student at a fraternity party, contending that the record does not adequately identify him as the perpetrator. Although the record on this point is skimpier than it ought to be, we conclude that it is sufficient and affirm.

## FACTS

This case, as with many cases involving young adults, was fueled by alcohol. Washington State University (WSU) student A.R. attended a party at the Pi Kappa Phi fraternity on the evening of March 3, 2012. She consumed some alcohol that night and was dancing when an unknown large male started dancing with her from behind. He put his hands on her and started moving her towards an exit.

He turned A.R. around and started kissing her while putting his hands down her skirt and up her shirt, touching her intimate areas. This was the first A.R. saw of her assailant's face. She tried calling for help, but no one responded due to the noise.[1] Another woman did make eye contact with A.R. and came to her aid. A.R. escaped outside, made contact with her friends, and left the fraternity.

The next morning A.R. notified the Pullman Police Department. At the suggestion of her father, A.R. looked through pictures of the fraternity's members on its Facebook page. She identified Mr. Romer as the man who had assaulted her. She also tracked down the woman who had rescued her. That woman also allegedly identified Mr. Romer to the police. However, the woman did not testify in the subsequent administrative proceedings and the police report likewise was not entered in that record.

Mr. Romer was arrested by the police and later charged by the county prosecutor with Indecent Liberties. Seeing a newspaper article about the arrest, WSU opened an investigation into the incident. Administrative personnel met with A.R. several times to discuss the incident, but never asked her to identify her assailant. Due to the pending criminal case, Mr. Romer invoked his privilege against self-incrimination when contacted by WSU investigators. Fraternity members reported knowing nothing about the matter, although some indicated that Mr. Romer had been at the party.

---

[1] The fraternity later indicated that about 100 people were in attendance.

WSU Conduct Officer Bernadette Buchanan sent Mr. Romer a formal list of charges and notice of a hearing. He was accused of sexual misconduct, violation of WSU policy, and violation of law.[2] A hearing was scheduled before the Conduct Board. A.R. did not want to see Mr. Romer prosecuted criminally or administratively, but wanted to meet him in an alternative dispute resolution setting and have him undergo a risk assessment. WSU does not favor alternative resolution of sexual misconduct cases.

A.R. met with Mr. Romer in a meeting facilitated by the Whitman County Prosecutor's Office. Subsequent to that meeting, the charge was reduced to fourth degree assault with sexual motivation in the Whitman County District Court. The charge was dismissed in December, 2013, after Mr. Romer complied with the conditions of a continuance for dismissal.

The administrative hearing took place before five members of the Conduct Board on November 7, 2012. It was an inquisitive proceeding, with the Board members asking questions of the witnesses. Mr. Romer was able to ask the Board's chair to ask questions on his behalf. Mr. Romer's counsel was present to give advice to Mr. Romer but could not otherwise take part in the proceedings. Mr. Romer exercised his right to remain silent and declined to enter a plea to the charges, so the Board entered pleas of "not responsible" for him.

---

[2] Respectively: WAC 504-26-221; WAC 504-26-209; WAC 504-26-210.

When A.R. testified, WSU moved to exclude Mr. Romer from the hearing. The Board required him to leave the room and listen remotely to A.R.'s testimony. He was permitted to send questions for the Board to ask. She described the incident as detailed previously. She was not asked to identify Mr. Romer and none of her testimony touched upon the identification issue. She did tell the Board that she had identified "him" by using Facebook. She was not asked the name of the person she identified, nor was any photograph placed into evidence.

None of the other witnesses identified Mr. Romer. He was called to testify, but declined to address the events of the evening in question. He did tell the Board that he had met with A.R. at her request, had paid for a "victim outreach expert" for A.R., and had scheduled a risk assessment for himself. Various women submitted statements on behalf of Mr. Romer and one of them testified by reading her statement. She also attested that she did not believe Mr. Romer was capable of committing this offense no matter how much alcohol was involved.

In closing statements, both sides urged the Board to make a good and reasoned decision, but the statements were not argument of the kind typically presented in court. The Board issued a written ruling nine days later that found all three violations had been committed. The Board expressly found A.R.'s testimony to be reliable and that Mr. Romer's witnesses were not helpful because they had not seen the incident. The Board trespassed Mr. Romer from the WSU campus through the end of 2018, but allowed him

4

No. 31806-1-III
*Romer v. WSU*

to complete his degree off campus in order to ensure that he did not come into contact with A.R.

Mr. Romer then appealed to the superior court. The court affirmed the administrative findings and sanction, but expressly commented that the evidence of identification was weak, although sufficient. He encouraged WSU to do a better job in future cases. The trial court denied reconsideration. Mr. Romer then timely appealed to this court.

## ANALYSIS

The sole issue[3] we address is Mr. Romer's argument that the evidence of identification was insufficient to establish that he was the person who assaulted A.R. Like the trial court, we agree that the evidence was quite thin, but conclude that it was barely sufficient.

Well settled standards govern our review of administrative hearing appeals. We review the Board's decision, not that of the superior court. *Alpha Kappa Lambda Frat. v. Wash. State Univ.*, 152 Wn. App. 401, 414, 216 P.3d 451 (2009). The non-prevailing party below bears the burden of proving the Board's decision was incorrect. *Id.* In evaluating a challenge to the sufficiency of the evidence to support a finding, this court

---

[3] In light of our disposition, we need not address Mr. Romer's contention that he is entitled to attorney fees for prevailing against WSU in an administrative proceeding. *See* RCW 4.84.350.

5

looks to see if the finding is supported by "substantial evidence" in the record as a whole. RCW 34.05.570(3)(e). "Substantial evidence" is evidence sufficient "to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012).

The disputed findings in this case are those identifying Mr. Romer as the responsible party. Both parties rely on criminal cases for analogy. The leading Washington criminal case is *State v. Hill*, 83 Wn.2d 558, 520 P.2d 618 (1974). There the court stated:

> It is axiomatic in criminal trials that the prosecution bears the burden of establishing beyond a reasonable doubt the identity of the accused as the person who committed the offense. . . . Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated.

*Id.* at 560. The court concluded that testimony that "Jimmy Hill" and "the defendant" was the responsible party was sufficient to prove identity even in the absence of in-court identification. *Id.*

Mr. Romer also relies on the decision in *State v. Huber*, 129 Wn. App. 499, 119 P.3d 388 (2005). There the prosecution failed to establish that the Mr. Huber who was present at the jury trial for bail jumping was the same Mr. Huber who had failed to appear in court at an earlier hearing. *Id.* at 500-01. Noting that many people have the same name, the court concluded that the evidentiary flaw in the case was the failure to

6

connect the paperwork from the first case with the defendant in the current bail jumping case. *Id.* at 503.

The evidentiary problem here is similar to that in *Hill* and *Huber* since no one expressly identified the person sitting at the hearing as the Brian Romer who was charged with the misconduct. We think *Huber* is less on point than *Hill* given the circumstantial evidence of identity. WSU did not rely solely on the similarity of names that occurred in *Huber*.

There is evidence linking the "him" A.R. identified to the Board with Brian Romer. Mr. Romer was at the party, a fact confirmed by his character witness. In his statement to the Board, Mr. Romer told the members that he had recently met with the victim and described all of the things he was doing for her as a result of the incident, including voluntarily absenting himself from Pullman and undergoing an evaluation.[4] At no time did the victim indicate she was talking to the wrong person. Given her desire that he not be prosecuted and that the Board found her credible, we believe that the Board would have inferred she was talking to the correct person at the alternative resolution meeting. Ultimately, the criminal case was reduced and dismissed in accordance with her desires.

---

[4] Mr. Romer also was kicked out of his fraternity due to the incident.

As this was a civil case, the Board was also permitted to infer facts from Mr. Romer's invocation of his privilege against self-incrimination. Although no inference can be drawn against a criminal defendant, the same is not true in a civil proceeding. "When a witness in a civil suit refuses to answer a question on the ground that his answer might tend to incriminate him, the result sought to be achieved by invoking the constitutional privilege is accomplished. Such refusal cannot be used against him in a subsequent criminal proceeding. However, the trier of facts in a civil case is entitled to draw an inference from his refusal to so testify." *Ikeda v. Curtis*, 43 Wn.2d 449, 458, 261 P.2d 684 (1953). *Accord, In re Recall of Lindquist*, 172 Wn.2d 120, 138, 258 P.3d 9 (2011). If Mr. Romer was not the man who was accused, he had no reason to invoke the privilege in this administrative proceeding.

Finally, it goes against common experience for someone wrongly accused in a civil or administrative manner to fail to speak up. It is not uncommon for one accused of a crime to speak up and say, "You have the wrong man," even though there is an absolute right not to speak. It is even more likely for a wrongly accused person to speak out in a non-criminal proceeding. We think the Board could reasonably find that it was dealing with the right person when a man who had been administratively accused of these actions responded to the hearing, took part in it, and presented mitigation evidence while declining to address the merits of the claim. It is simply inconceivable that a wrongly

accused person would limit his participation in that manner rather than marshal his defense to the merits of the claim.

In many respects this situation recalls the solution to a mystery presented by the immortal Sherlock Holmes, when he solved a case involving the theft of a race horse by noting the fact that the guard dog has been silent during the theft. Holmes deduced that the dog was silent because the thief was the horse's trainer, a person familiar to the dog. *See* SIR ARTHUR CONAN DOYLE, *The Adventure of Silver Blaze, in* THE MEMOIRS OF SHERLOCK HOLMES (1894). A.R. similarly here did not protest that she was dealing with the wrong man when she met with Mr. Romer and asked that he assure her that he was not dangerous to women at WSU. She had no reason to take those actions if she was not addressing her assailant.[5]

All in all, we conclude that the evidence is sufficient, although barely so. With a final bow to Holmes, we simply note that this was an elementary error that should not have occurred. If a victim is unable to face an abuser, at a minimum there should be some indication through photographic evidence that the victim can identify the defendant at the hearing or some other witness should undertake the task. Had identity been a

---

[5] Similarly here, Mr. Romer did not protest because he was familiar with his involvement in the incident. He could wisely remain silent in the proceedings and put WSU to its proof, but that sort of behavior is out of character for one who was not involved.

contested issue at the hearing, the Board might easily have reached the opposite decision in this case.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Fearing, J.