IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54738-4-II |
| Respondent, | |
| v. | |
| JOHN GRIFFIN HEADRICK, | |
| Appellant, | |
| In the Matter of the Personal Restraint of: | Consolidated with<br>No. 53288-3-II |
| JOHN GRIFFIN HEADRICK, | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, C.J. — John G. Headrick appeals his conviction for first degree child molestation, arguing there was insufficient evidence to support his conviction. Headrick also appeals the conditions of his sentence, arguing that defense counsel was ineffective for failing to object to a sentencing condition that prohibits contact with his biological daughter. And Headrick filed a personal restrain petition (PRP), alleging that the trial court lacked jurisdiction over his case. We affirm Headrick's conviction and sentence and deny his PRP.

FACTS

A.    PROCEDURAL HISTORY

In 2017, a jury found Headrick guilty of first degree child molestation. *State v. Headrick*, No. 50918-1-II, slip op. at 7 (Wash. Ct. App. March 5, 2019) (unpublished).[1]  We reversed

---

[1]  https://www.courts.wa.gov/opinions/pdf/D2%2050918-1-II%20Unpublished%20Opinion.pdf.

Headrick's conviction because the trial court denied Headrick's request for an instruction on fourth degree assault as a lesser included offense and remanded the case for a new trial. *Id.* at 15.

Prior to his retrial, Headrick began refusing to participate in court hearings. When Headrick was expected to appear in court, he would act as though he was unconscious and refuse to communicate with anyone, including his attorney and the trial court. On the morning of trial, Headrick was brought to court to determine if he would be able to attend and participate in trial.

Sergeant Kyle Parkin, the administrative sergeant at the Grays Harbor County Jail, explained to the court that Headrick had been behaving normally prior to being told he needed to go to court. Headrick told Sergeant Parkin that he did not want to attend his trial. When jail staff was ordered to bring Headrick to court, he went "completely limp in his bunk." Verbatim Report of Proceedings (VRP) (Feb. 13, Mar. 3 & Mar. 4, 2020) at 19. Because Headrick was sliding out of a normal wheelchair, the jail staff had to secure him in a restraint chair to bring him to court.

Both Headrick's attorney and the trial court attempted to communicate with Headrick, but Headrick refused to respond to any questions. The trial court found that Headrick's behavior— being nonresponsive and having to be bound in a chair—violated court decorum, was disruptive, and was prejudicial to Headrick. Because of his conduct, the trial court found that he was knowingly, intelligently, and voluntarily waiving his right to be present at trial. The trial court found that as long as Headrick's conduct continued, he would be removed from the courtroom during trial. The trial court informed Headrick that if he changed his mind and wanted to be present and participate in his trial, he should notify jail staff and arrangements would be made for him to be present.

After jury selection, Headrick's attorney went to speak to Headrick about attending trial. He told Headrick that a jury had been selected. Headrick refused to communicate meaningfully with his attorney. Headrick's attorney represented to the trial court that Headrick appeared to continue his waiver of his right to be present.

B.    FACTUAL BACKGROUND

Kelsey Badger-Dye is the mother of J.L. born in 2009. In the summer of 2016, Badger-Dye met Headrick, who was her co-worker's next door neighbor. Their children began playing together. Headrick's daughter, E.H., was five years old and J.L. was seven years old at the time. E.H. and J.L. began having playdates.

On December 16, 2016, the girls had a sleepover. Badger-Dye dropped J.L. off at Headrick's house. Headrick did not contact Badger-Dye during the sleepover while J.L. was at Headrick's house. When Badger-Dye picked up J.L., J.L. ran to her and asked to go home right away. Further, when she picked up J.L., Headrick did not tell her J.L. had experienced any medical issue.

A few days later, Headrick contacted Badger-Dye to arrange another sleepover. Initially, Badger-Dye agreed to the sleepover. However, when Badger-Dye told J.L. about the sleepover, J.L. begged not to go. And when Headrick took E.H. and J.L. out to dinner, they returned less than an hour later because J.L. said she was sick.

J.L. told Badger-Dye what happened at the sleepover, and Badger-Dye filed a police report. Badger-Dye agreed to wear a wire and confront Headrick as part of the police investigation.

The State charged Headrick with first degree child molestation.

C.     TRIAL

In addition to witness testimony establishing the factual background discussed above, J.L. testified that she remembered going to E.H.'s for sleepover around Christmas. While she was playing with E.H., she began crying because E.H. had taken all the candy. Then "[E.H.]'s dad came in," picked up J.L., and brought her to his room. VRP (Jan. 27, Feb. 19, Mar. 3 & Mar. 6, 2020) at 133. J.L. testified that Headrick laid her down on the bed and pulled her pants and underwear down to her shoes. Then he got some lotion and rubbed it on her "pee-pee." VRP (Jan. 27, Feb. 19, Mar. 3 & Mar. 6, 2020) at 134. J.L. stated that her "pee-pee" refers to the part of her body she uses to go to bathroom. J.L. told him that she wanted him to stop, got up, and put her pants back on.

Headrick did not say anything to J.L. when he took off her pants. Then, when Headrick got the lotion, he did not ask J.L. if she wanted lotion nor did he say anything else to her about it.

J.L. also testified that, at the time of the sleepover, she did not need any help using the bathroom. She further testified that she did not need any help in the shower or with bathing.

Chief Darren Wallace of Grays Harbor County Sheriff's Office spoke with Headrick about J.L.'s allegations. Headrick denied all the allegations. Headrick explained that J.L. was sick, and he rubbed lotion on her to make her feel better. Headrick said that he did the same thing for his own daughter. When Chief Wallace told Headrick that J.L. said he touched her vagina, Headrick claimed that any touching was accidental and "he didn't get any sexual gratification from touching her." VRP (Jan. 27, Feb. 19, Mar. 3 & Mar. 6, 2020) at 116.

4

Chief Wallace identified a photograph of Headrick at trial. Chief Wallace also identified Headrick as the person he interviewed. Chief Wallace further testified that he had been present in court for this case on other occasions and Headrick was the person who had appeared "in front of this court in this matter." VRP (Jan. 27, Feb. 19, Mar. 3 & Mar. 6, 2020) at 116.

The jury found Headrick guilty of first degree child molestation.

The trial court sentenced Headrick as a persistent offender because of three prior first degree child molestation convictions and imposed a sentence of life imprisonment without the possibility of parole. The trial court also imposed a crime-related condition prohibiting any contact with minors under 18, including children related to Headrick.

Headrick appeals.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Headrick challenges the sufficiency of the evidence supporting his first degree child molestation conviction. First, Headrick argues that there was insufficient evidence to prove Headrick committed the alleged offense because the victim did not identify him. Second, Headrick argues there was insufficient evidence to prove that sexual contact occurred. We disagree.

"To determine whether there is sufficient evidence to support a criminal conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (internal quotation marks omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)

(plurality opinion)), *cert. denied*, 140 S. Ct. 834 (2020). "When a criminal defendant challenges sufficiency of the evidence, 'all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). "'Circumstantial evidence and direct evidence are equally reliable in determining the sufficiency of the evidence.'" *Id.* (internal quotation marks omitted) (quoting *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010)).

      1.      Proof of Identification

Headrick argues that the State failed to prove that he was the person who had committed the offense because "no witness identified the Defendant as the 'John' or 'John Headrick,' or 'E.H.'s dad' who committed the alleged crime." Br. of Appellant at 10. We disagree.

> "It is axiomatic in criminal trials that the prosecution bears the burden of establishing beyond a reasonable doubt the identity of the accused as the person who committed the offense. Identity involves a question of fact for the jury and any relevant fact, either direct or circumstantial, which would convince or tend to convince a person of ordinary judgment, in carrying on his everyday affairs, of the identity of a person should be received and evaluated."

*State v. Huber*, 129 Wn. App. 499, 501-02, 119 P.3d 388 (2005) (quoting *State v. Hill*, 83 Wn.2d 558, 560, 520 P.2d 618 (1974)).

Here, because Headrick refused to participate in the trial, no witness had the opportunity to identify a person sitting in court as Headrick, the person who committed the offense against

J.L.[2] However, there was sufficient circumstantial evidence to support the jury's verdict. The jury could infer the person J.L. testified molested her was the same person Badger-Dye confronted because Badger-Dye had dropped J.L. off for the sleepover with E.H. and Badger-Dye knew Headrick, who was E.H.'s dad. J.L. testified that it was E.H.'s dad who molested her. From there, the jury could infer the person Badger-Dye confronted was the defendant because Chief Wallace, who was involved in recording the confrontation between Badger-Dye and Headrick, later interviewed and arrested Headrick. Chief Wallace also identified Headrick as the person who had appeared in court in this case. Reasonable inferences from the evidence link the person who J.L. testified molested her to the defendant in this case, allowing a rational trier of fact to find beyond a reasonable doubt that Headrick molested J.L. Therefore, there was sufficient evidence to support the jury's verdict.

2.      Proof of Sexual Contact

Headrick also argues that there was not sufficient evidence to prove that sexual contact occurred. Headrick contends that he was only cleaning J.L. as part of a caretaking function, and therefore, there was an innocent explanation for Headrick's conduct. Headrick asserts that because there was an innocent explanation for his conduct, the State was required to present more evidence than simple touching to prove sexual gratification and failed to do so. We disagree.

To convict Headrick of first degree child molestation, the State had to prove that Headrick had sexual contact with J.L., J.L. was under 12 years old at the time, Headrick was at least 36

---

[2] In *Hill*, the court noted that the prosecution should not omit in-court identifications "where feasible." 83 Wn.2d at 560. However, due to Headrick's conduct and refusal to participate in trial, no in-court identification was feasible in this case.

months older than J.L., and Headrick was not married to J.L. Former RCW 9A.44.083(1) (1994). "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "'Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification.'" *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991), *review denied*, 118 Wn.2d 1013 (1992)).

Here, although Headrick was the supervising adult at the childrens' sleepover, the jury could reasonably find that Headrick was not performing a caretaking function that provided an innocent explanation for the touching. J.L. was seven years old at the time of the sleepover and testified that she did not need help with bathing, dressing, or other similar functions; therefore, a reasonable jury could find that there was no reason Headrick had to perform caretaking functions that involved touching J.L. on or near the vagina. Accordingly, the touching alone was sufficient evidence of sexual contact. *See Harstad*, 153 Wn. App. at 21.

Further, even if Headrick was in a position to be performing caretaking functions for J.L. at the sleepover, there was sufficient evidence to support a finding that the touching was sexual contact. Here, Headrick took J.L. to his bedroom rather than the bathroom, which is the more reasonable place to take a child who needs to be cleaned and have cream applied. Furthermore, because Headrick did not tell J.L. what he was doing, tell her he was trying to help her or perform a specific function, or even ask her if she could take care of it herself, the jury could reasonably infer that Headrick had improper intentions. The jury could also reasonably infer that Headrick

8

knew J.L. was not really sick or did not need help because he did not communicate anything about the incident to Badger-Dye during the sleepover or the next day when he dropped off J.L. after the sleepover. Based on Headrick's conduct, which support reasonable inferences inconsistent with innocent touching or a caretaking function, a rational trier of fact could have concluded beyond a reasonable doubt that the touching was sexual contact. Accordingly, there was sufficient evidence to support the jury's verdict.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Headrick argues that he received ineffective assistance of counsel because counsel failed to object to the sentencing condition prohibiting contact with his minor daughter. We disagree.

To prevail on an ineffective assistance of counsel claim, Headrick must show both that defense counsel's representation was deficient and the deficient performance resulted in prejudice to the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. There is a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If the defendant bases an ineffective assistance of counsel claim on defense counsel's failure to object, the defendant must show that the objection would have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

1.     Deficient Performance

Headrick argues that defense counsel should have objected to the sentencing condition because it interferes with his constitutional right to parent. We agree that parents have a fundamental liberty interest in the care, custody, and companionship of their children. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). However, parental rights are not absolute. *See id.* at 378. "Sentencing courts can restrict fundamental parenting rights by conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010). The trial court should conduct this analysis on the record. *State v. DeLeon*, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020).

If Headrick's attorney had objected to the condition prohibiting contact with all minors, the trial court would have been required to consider Headrick's right to parent when imposing the condition. However, Headrick has not shown that an objection to the condition of no contact with his biological daughter would have succeeded. Headrick clearly posed a risk to children in general because this was his fourth conviction for first degree child molestation. And although E.H. did not witness Headrick's offense, Headrick did take advantage of E.H.'s friendship with J.L. to molest J.L. Given Headrick's history of offending against children and taking advantage of his child's friendship to commit the offense, the trial court likely would have exercised its discretion and imposed the condition despite counsel's objection. Therefore, Headrick has not shown that his counsel's performance was deficient for failing to object to the sentencing condition.

2.      Prejudice

Headrick also asserts that the failure to object was prejudicial because, if the objection had been made, the trial court would have modified the provision to allow Headrick to have contact with E.H.  We disagree.

At Headrick's first sentencing, the State presented evidence and argument showing that Headrick actively used E.H. to offend against other children.  The State also documented attempts by Headrick to interfere with E.H.'s forensic interview after his arrest.  At Headrick's prior sentencing, the State presented evidence and argued strenuously against Headrick having contact with any children, including his daughter.  The trial court in the prior sentencing imposed a condition prohibiting contact with minors, including E.H.

It is likely that if Headrick's counsel had objected to the condition prohibiting contact with E.H., the State would have presented the same arguments and evidence supporting a no contact condition.  Because the State could document at least one instance of Headrick actively using E.H. in his offenses against children and of attempting to influence E.H.'s statements to authorities, it is not likely that the trial court here would have modified the condition to allow Headrick to have contact with E.H.  Because it is not likely that the outcome would have been different, Headrick cannot show that he was prejudiced by his counsel's failure to object to sentencing condition.  Accordingly, Headrick's ineffective assistance of counsel claim fails.

### PRP

In his PRP, Headrick claims that the trial court lacked jurisdiction over the case because the offense occurred on tribal land and he is of Indian descent.  In response to Headrick's PRP, the

State provided the declaration of Dan Lindgren, the Grays Harbor County Assessor. Lindgren declared that Headrick's property is located entirely in Grays Harbor County, with no portion of the property located on tribal land. Because the offense did not occur on tribal land, there is no factual basis for Headrick's argument that the trial court lacked jurisdiction over his offense. Headrick's PRP is denied.

We affirm Headrick's conviction and sentence and deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Cruser, J.